## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| JAMES SHEHAN, on behalf of himself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **Civil Action File No.:** ) 1:14-cv-00900-JHE ) ) |
| WELLS FARGO BANK, N.A. | ) ) |
| Defendant. | ) ) ) |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY CASE

### I.     INTRODUCTION

Wells Fargo Bank, N.A. ("Wells Fargo") pins its request for an indefinite stay of this case, Doc. 17, on the occurrence of an exceedingly unlikely chain of events.  First, the FCC must select the two petitions of importance to Wells Fargo, out of the hundreds of matters before it, and address them in a timely manner.  Then, the FCC must find in Wells Fargo's favor, despite contrary decisions by the only circuit courts of appeals to address the matters at issue.  Third, the FCC must apply its decisions not just prospectively, but *retroactively* to cover Wells Fargo's *past* conduct.  After all that, the Eleventh Circuit would have to reverse its directly on-point decisions in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014), and *Breslow v. Wells Fargo Bank, N.A.*, No. 12-14564, --- F.3d ----, 2014 WL 2565984 (11th Cir. June 9, 2014).[1]  Simply, Wells Fargo's request is a bridge too far.  And notably, the only district courts in this Circuit to address similar stay requests under the primary jurisdiction after *Osorio* have rejected them.  This Court should do the same.

---

[1] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

1

Wells Fargo asks this Court to stay this matter until the FCC issues decisions on petitions that seek, respectively, "clarification" on an issue that has already been reviewed and decided, and the creation of a "safe harbor" provision that has no basis in the TCPA. To be clear, these questions have been decided—conclusively and against Wells Fargo—by Congress through the enactment of the TCPA and by the Eleventh Circuit. Indeed, the Eleventh Circuit's opinions in *Osorio* and *Breslow* squarely rejected the arguments upon which Wells Fargo now relies, based upon a common sense interpretation of a straightforward term that does not require any technical expertise to comprehend and for which FCC guidance is unnecessary.  Because the law in this Circuit is well-settled, there is no reason to stay this case.

And although Wells Fargo represents that the FCC "is likely to act on the UHS and ACA Petitions as early as this year," Doc. 17 at 2, it is extremely unlikely that the FCC will ever rule on these petitions. This is because whether the FCC decides to rule on a petition is entirely discretionary, and the FCC acts only upon a handful of the scores of submissions it receives. Wells Fargo also fails to mention that, in the unlikely event that the FCC does take some action, it could take years before any rulemaking is finalized. Even then, an FCC decision in Wells Fargo's favor is unlikely to be applied retroactively, and in any event would not trump *Osorio* and *Breslow*, which are settled law.  Under such circumstances, and in light of the controlling authority from the Eleventh Circuit, a stay would be ill-advised and prejudicial.

II.     ARGUMENT

    **A. Congress, and the Eleventh Circuit, have conclusively decided the issues presented in the petitions to the FCC.**

Wells Fargo cavalierly, and derisively, attempts to reduce the Eleventh Circuit's well-reasoned opinions in *Osorio* and *Breslow* as "hazard[ing] its own guess as to the meaning of the phrase 'called party'" under the TCPA. Doc. 17 at 9.  Far from "hazard[ing] its own guess," *id*.,

the Eleventh Circuit squarely addressed the very arguments advanced to the FCC in the petitions upon which Wells Fargo grounds its motion to stay.

Specifically, while the "UHS Petition asks the FCC to clarify the applicability of the TCPA to calls 'to wireless numbers for which valid prior express consent has been obtained but which, unbeknownst to the calling party, have subsequently been reassigned from one wireless subscriber to another,'" Doc. 17 at 2, the Eleventh Circuit answered this question in *Osorio*, adopting Judge Easterbrook's sound reasoning in *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012):

> Only one court of appeals, the Seventh Circuit, appears to have addressed the meaning of the term "called party" in the context of 47 U.S.C. § 227(b)(1)(A)(iii). In a case brought by cell-phone subscribers receiving debt-collection calls directed at prior subscribers to their phone numbers, Judge Easterbrook canvassed the statute and reasoned as follows:
>
>> Section 227 uses the phrase "called party" seven times all told. Four unmistakably denote the current subscriber (the person who pays the bills or needs the line in order to receive other calls); one denotes whoever answers the call (usually the subscriber); and the others (the two that deal with consent) have a referent that cannot be pinned down by context. [Defendant] Enhanced Recovery asks us to conclude that, despite the presumption of uniform usage within a single statutory section, those two uses, and those two alone, denote the person Bill Collector is trying to reach—in other words, Customer, who Enhanced Recovery dubs the "intended recipient of the call."
>
> *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012). But, as Judge Easterbrook explained, "The presumption that a statute uses a single phrase consistently, at least over so short a span, *see Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), implies that the consent must come from the current subscriber." *Soppet*, 679 F.3d at 639-40. We agree.
>
> The Seventh Circuit also expressly refuted State Farm's contention that the statute uses the term "called party" to refer to the intended recipient of the phone call:
>
>> The phrase "intended recipient" does not appear anywhere in § 227, so what justification could there be for equating "called party" with "intended recipient of the call"? (Section 227(b)(1) does use the word "recipient" in a context where "recipient" means "current subscriber"; this doesn't remotely suggest that "called party" must mean "intended

3

> recipient.") Enhanced Recovery starts with the proposition that consent is effective until revoked and infers that Customer's consent thus must last until Bystander, the new subscriber, revokes it. The idea that one person can revoke another's consent is odd. Anyway, there can't be any long-term consent to call a given Cell Number, because no one—not Customer, not Bystander, not even the phone company—has a property right in a phone number. *See Jahn v. 1–800–FLOWERS.com, Inc.,* 284 F.3d 807 (7th Cir.2002). Consent to call a given number must come from its current subscriber. Enhanced Recovery implicitly acknowledges this by saying that the current subscriber can rescind any earlier consent to call Cell Number. But this really means that Customer's authority to give consent, and thus any consent previously given, lapses when Cell Number is reassigned.
>
> *Id.* at 640–41.
>
> We find this logic persuasive. Although State Farm argues that Betancourt could consent to the debt-collection calls (she being the equivalent of the Customer in *Soppet*) it also concedes that Osorio could revoke Betancourt's consent (he being the equivalent of the Bystander in *Soppet*) In tune with Judge Easterbrook's analysis, we believe this really means that Betancourt had no authority to consent in her own right to the debt-collection calls to No. 8626 because one can consent to a call only if one has the authority to do so, and only the subscriber (here, Osorio) can give such consent, either directly or through an authorized agent. We accordingly reject State Farm's argument that the "intended recipient" is the "called party" referred to in 47 U.S.C. § 227(b)(1)(A).

*Osorio*, 746 F.3d at 1251-52; *Breslow*, 2014 WL 2565984, at *1 ("During the pendency of this appeal, another panel of this court, faced with the same question, concluded in a published opinion that 'called party,' for purposes of § 227(b)(1)(A)(iii), means the subscriber to the cell phone service. That panel rejected the defendant's contention that called party could mean intended recipient.").

The ACA's petition likewise provides no assistance to Wells Fargo's cause. While Wells Fargo submits that the ACA's "[p]etition asks the FCC to, *inter alia,* establish a 'safe harbor for non-telemarketing calls when the debt collector had previously obtained appropriate consent and had no intent to call any person other than the person who had previously provided consent to be called,'" Doc. 17 at 2, the Eleventh Circuit foreclosed such a defense in *Osorio*:

4

> [O]ne can consent to a call only if one has the authority to do so, and *only the subscriber (here, Osorio) can give such consent, either directly or through an authorized agent*. We accordingly reject State Farm's argument that the "intended recipient" is the "called party" referred to in 47 U.S.C. § 227(b)(1)(A).
>
> \*   \*   \*
>
> The same logic is applicable to the concept of consent in this case: To fall within § 227(b)(1)(A)(iii)'s consent exception, *State Farm must demonstrate that it had the consent of Osorio, as defined by the common law, to call No. 8626.*

746 F.3d at 1242, 1253.

To be sure, the facts in *Breslow* are materially identical to those here, and also involve Wells Fargo's autodialing campaigns to the wrong persons:

> On August 11, 2011, Breslow, individually and on behalf of "R.B.," filed suit in the District Court for the Southern District of Florida, alleging that Wells Fargo violated the TCPA's prohibition on autodialing cell phones without the express consent of the called party. Following discovery, Breslow filed a motion for partial summary judgment on the issue of Wells Fargo's liability. In response, Wells Fargo also filed a motion for summary judgment. It accompanied its motion with an affidavit of one of its employees, who stated that Wells Fargo had called the cell phone number used by R.B. to collect a debt from a former customer who had listed the phone number on a Wells Fargo account application. The affidavit further stated that Wells Fargo was unaware that the cell phone number was no longer assigned to the former customer and that the former customer never revoked his consent or requested that Wells Fargo cease calling the number. Wells Fargo argued that this former customer—the intended recipient of the autodial call—was the "called party" for purposes of § 227, and because he had consented to being called via automatic dialing system, the TCPA's prohibition did not apply

*Breslow*, 2014 WL 2565984, at *1 (affirming partial summary judgment in favor of the plaintiff and against Wells Fargo). As such, and under binding Eleventh Circuit precedent, prior express consent must come from the called party, not a previous holder of a cellular telephone number.[2]

While Wells Fargo makes no secret of its contempt for the Eleventh Circuit's holdings in

---

[2] Wells Fargo tacitly concedes that it did not obtain consent from Plaintiff James Shehan to autodial his cellular telephone. Doc. 17 at 4. Rather, and as in *Breslow*, Wells Fargo contends that it obtained consent from a person named "Brasher" to autodial Brasher's cellular telephone. *Id.* As explained in *Breslow* and *Osorio*, that Wells Fargo purportedly had the consent of a *previous* holder of Mr. Shehan's cellular telephone number does not amount to consent under the TCPA to autodial Mr. Shehan.

5

*Osorio* and *Breslow*, *see* Doc. 17 at 9, those decisions are the law of this Circuit and are binding on this Court. And because the Eleventh Circuit has spoken on these questions, a stay is unwarranted. *See Murray v. Diversified Consultants, Inc.*, No. 8:13-cv-3074-T-30AEP, 2014 WL 2574042, at *1 (Moody, J.) (denying motion to stay TCPA case because *Osorio* provides "clear" guidance for numerous matters under the TCPA that also have been presented to the FCC); *accord Fail v. Diversified Consultants, Inc.*, No. 8:14-cv-525-T-30EAJ, 2014 WL 3574532, at *1 (M.D. Fla. June 9, 2014) (same); *Ayers v. Verizon Communications, Inc.*, No. 8:14-cv-626-T-30MAP, 2014 WL 2574543, at *1 (M.D. Fla. June 9, 2014) (same); s*ee also Fenescey v. Diversified Consultants, Inc.*, No. 3:14-CV-347, 2014 WL 2526571, at *2 (M.D. Pa. June 4, 2014) (denying motion to stay under primary jurisdiction doctrine where appellate court already addressed the issue before the FCC, and noting, "[g]iven the force and clarity of this precedential opinion," "no stay of the proceedings is warranted on the basis of the FCC's consideration of this issue or related matters."); *Blair v. The CBE Group, Inc.*, No. 3:13-cv-00134-MMA-WVG, Doc. 88, at 4 (C.D. Cal. June 9, 2014) (denying motion to stay under primary jurisdiction doctrine where Ninth Circuit already addressed matters at issue).

Judge Alsup's unpublished decision in *Heinrichs v. Wells Fargo Bank, N.A.*, No. 13-cv-5434, Dkt No. 56 (N.D. Cal. April 15, 2014), is inapposite. There, Judge Alsup noted in the first sentence of his analysis, referring to the Ninth Circuit, that "[o]ur court of appeals has not directly addressed what the specific definition of 'called party' is under Section 227(b)(1)(A)." *Id*. at 2. In sharp contrast, the Eleventh Circuit directly addressed this question in *Osorio* and *Breslow*. Thus, Wells Fargo's argument in favor of a stay because of "the need for a uniform interpretation of a statute or regulation," Doc. 17 at 11-13, fails as courts in the Eleventh Circuit must interpret the phrase "called party" uniformly and in accordance with *Osorio* and *Breslow*.

### B. The relevant factors strongly militate against a stay.

#### a. The issues raised by the ACA and UHS petitions do not implicate the FCC's specialized expertise and fact-finding abilities.

Even if the Eleventh Circuit had not squarely addressed the issues before the FCC in *Osorio* and *Breslow*—which it indisputably did—the questions presented in the FCC petitions are matters of statutory construction, not matters requiring complex expertise. For this reason, the cases relied upon by Wells Fargo where courts granted a stay to allow the FCC to explain the contours of an automatic telephone dialing system, an issue that requires some technological expertise, are unavailing. *See* Doc. 17 at 12. In sharp contrast, the question of who is a "called party" under the TCPA is a matter of statutory construction for which courts are well-equipped to undertake. *See Soppet*, 679 F.3d at 640 (analyzing text of TCPA to determine meaning of "called party"); *Osorio*, 746 F.3d at 1250-56; *Morse v. Allied Interstate, LLC*, No. 3:13-cv-00625, 2014 WL 2916480, at *2 (M.D. Pa. June 26, 2014) (denying motion to stay TCPA case because "[t]he issues have been generally addressed by the FCC and the issues presented are not so technical that this Court would be unable to decide the factual issues of this case based on conventional experiences, ordinary competence, and guidance from the prior FCC decisions.").

Far from being "ambiguous" or a "doozy," as Wells Fargo contends, Doc. 17 at 10, the Seventh and Eleventh Circuits had no trouble interpreting the plain language of the TCPA. Moreover, had the Eleventh Circuit wanted guidance from the FCC on these issues, it certainly could have asked for it.[3] That it did not do so underscores the straightforward nature of its decisions in *Osorio* and *Breslow*, where separate panels reached the same conclusion.

---

[3] For example, the Second Circuit requested guidance from the FCC in *Albert A. Nigro v. Mercantile Adjustment Bureau, LLC*, No. 13-1362. In response, the FCC filed an amicus brief on June 30, 2014. That the Eleventh Circuit did not request input from the FCC in *Osorio* or *Breslow* strongly implies that the Court felt FCC guidance on a straightforward question of statutory interpretation was unnecessary, further counseling against a stay here.

### b. Wells Fargo dramatically overstates the deference due FCC decisions by circuit courts of appeal.

Wells Fargo argues that the Eleventh Circuit, despite its clear rulings in *Osorio* and *Breslow*, "must still afford *Chevron* deference to the FCC's anticipated rulings, even if they are contrary to the positions that Circuit would have otherwise adopted. Hence the FCC's rulings on the ACA and UHS petitions will be binding on this court—even trumping the Eleventh Circuit's previous rulings—and prudence dictates that the agency charged with implementing the TCPA be afforded deference to rule." Doc. 17 at 9 (citation omitted). Not so.[4]

As the Eleventh Circuit explained in *Osorio*, it is not bound by decisions by the FCC, particularly when the decisions, like here, are issued *after* the conduct at issue occurs. *Osorio*, 746 F.3d at 1256 ("This guidance [by the FCC] is not dispositive of the present case because the FCC issued its ruling after the calls in question and because the ruling may not have been promulgated with the requisite meaningful review to invoke *Chevron* deference.") (quoting *Gager v. Dell Financial Services, LLC,* 727 F.3d 265, 271 n.5 (3d Cir. 2013) ("*Chevron* deference appears to be inappropriate here because the FCC never articulated a rationale for deciding why the TCPA affords consumers the right to revoke their prior express consent.")).[5]

---

[4] As set forth herein, Wells Fargo's statement that "the FCC's ruling on either the ACA Petition or the UHS Petition will be dispositive of the central issue of whether Wells Fargo can be held liable for calling Brasher on a number that Plaintiff contends belongs to him," Doc. 17 at 3, likewise is an exercise in hyperbole inconsistent with established law.

[5] The Supreme Court explained the limited contours of agency rulemaking last month in *Utility Air Regulatory Grp. V. E.P.A.*, 134 S.Ct. 2427, 2445 (2014): "We conclude that EPA's rewriting of the statutory thresholds was impermissible and therefore could not validate the Agency's interpretation of the triggering provisions. An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms. Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the unambiguously expressed intent of Congress." Thus, any decisions by the FCC are not absolute, particularly where, like here, the FCC is asked to interpret "unambiguous statutory terms."

To be sure, the Eleventh Circuit explained in *Osorio* that FCC guidance is not dispositive:

> We must still decide how one obtains the "prior express consent" of the called party. For purposes of this appeal only, we accept as valid the FCC's regulation to the effect that "autodialed ... calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In re Rules & Reg. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 559 (2008). We do so because counsel for Betancourt and Osorio have disclaimed any intent to challenge the regulation. But even accepting *arguendo* the regulation's validity, we must still determine whether Osorio, directly or indirectly, gave No. 8626 to State Farm as a number to call in connection with Betancourt's debt.

*Osorio*, 746 F.3d at 1252; *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1239 (S.D. Fla. 2013) (rejecting FCC guidance where "[t]he FCC's construction is inconsistent with the statute's plain language because it impermissibly amends the TCPA to provide an exception for 'prior express ***or implied*** consent.' Congress could have written the statute that way, but it didn't. And because it didn't, the FCC's contrary construction is not entitled to deference. Defendants' consent argument upon which they seek summary judgment is based on the 2008 FCC Ruling. And because Defendants' argument, like the 2008 FCC Ruling, is inconsistent with the statute's plain language, the Court rejects it.") (emphasis in original).

As Judge Moody explained in denying an analogous motion to stay at TCPA case post-*Osorio*, any future FCC guidance would be of little to no value to a case challenging prior conduct:

> Thus, the interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC, rather than postponing this case for an indefinite amount of time based on the possibility that the FCC *may* decide to reconsider its past positions. Further, any reconsideration by the FCC regarding its interpretation of these provisions would likely apply prospectively. *See id., see also Meyer v. Receivables Performance Management, LLC,* 2014 WL 1976664, at *1–*2 (W.D. Wash. May 14, 2014) (denying a similar motion to stay and stating: "There is no reason to believe that new FCC rules will have any impact on this case"). Notably, Plaintiff is seeking damages for past conduct.

9

*Fail*, 2014 WL 3574532, at *2; *Murray*, 2014 WL 2574042, at *2; *Ayers*, 2014 WL 2574543, at *2.

Thus, even in the extremely unlikely event that the FCC issues guidance contrary to *Osorio*, *Breslow*, and *Soppet*, such guidance would *not* "trump[] the Eleventh Circuit's previous rulings," Doc. 17 at 9, and become binding on this Court. *See Breslow*, 2014 WL 2565984, at *2 ("It is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.").[6]

### c. Courts typically confine the primary jurisdiction doctrine to issues of first impression.

As an initial matter, "[f]ederal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them." *Baykeeper v. NL Industries, Inc.*, 660 F.3d 686 (3d Cir. 2011) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Abstention, therefore, is the exception rather than the rule. *Id.* Thus, the primary jurisdiction doctrine "applies in a limited set of circumstances." *Clark v. Times Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). It is not a doctrine that requires all claims within an agency's purview be decided by the agency. *Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "Rather, it is a doctrine used by the courts to allocate initial decisionmaking responsibility between agencies and courts where such [jurisdictional] overlaps and potential for conflict exist." *Id.* The doctrine should only be invoked "if a claim requires resolution of an issue of first impression, or of a particularly

---

[6] Wells Fargo's reliance on *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010), bolsters the point. There, the Sixth Circuit made clear that "the FCC's position would be subject to review by the judiciary for reasonableness," and is thus not automatically binding. *Id.* at 467. In any event, that the Sixth Circuit sought guidance from the FCC on an unrelated question is of little import when the Eleventh Circuit, confronted with the very issues in the ACA and UHS petitions, chose not to seek FCC guidance prior to rendering its decisions in *Osorio* and *Breslow*.

complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Clark*, 523 F.3d at 1110.  Thus, when a pending FCC action does not raise an issue of first impression, a district court should deny a motion to stay litigation. *See, e.g., Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) (denying motion to stay because "the FCC has already ruled that a predictive dialer constitutes automatic telephone dialing equipment three times"); *Tovar v. Midland Credit Mgmt.*, No. 10cv2600 MMA (MDD), 2011 WL 1431988, at *4 (S.D. Cal. April 13, 2011) (denying motion to stay pending FCC action); *Robinson v. Midland Funding, LLC*, No. 10cv2261 MMA (AJB), 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011) (same); *Swope v. Credit Mgmt., LP*, No. 4:12CV832 CDP, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) (denying motion to stay, noting that the "FCC has already considered the particular issues posed by the petition at least twice").

      While the FCC may not have defined the term "called party," numerous courts have, thus weighing strongly against a stay on primary jurisdiction grounds.  To be sure, the meaning of the term "called party" has been addressed by numerous district courts across the country and by the Seventh and Eleventh Circuits.  As such, there is no new or novel question requiring FCC input.  In contrast, adopting Wells Fargo's position would never allow for the finality of litigation when an administrative agency has yet to weigh in on a particular issue of statutory construction.  Because there are an infinite number of matters the FCC has not ruled upon, allowing a stay on the hope that the FCC might address such issues one day—particularly in the face of binding Circuit authority that has addressed the exact question—is unwarranted.

      In any event, previous guidance from the FCC strongly suggests that it would not expand the scope of prior express consent in the manner Wells Fargo seeks.  In 1992, the FCC noted that

"under the prohibitions set forth in § 227(b)(1) ... persons who knowingly release their phone number have in effect given their invitation or permission to be called *at the number which they have given*, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, at ¶ 31 (Oct. 16, 1992). Then, in 2008, the FCC "emphasize[d] that prior express consent is deemed to be granted *only if the wireless number was provided by the consumer to the creditor*, and that such number was provided during the transaction that resulted in the debt owed." Numerous courts have abided by the FCC's interpretation of the TCPA in this regard, including *Osorio*. *See, e.g., Soppet*, 679 F.3d at 643 (holding that the "prior express consent of the called party" exemption, by its plain language, requires that the person subscribing to the called number at the time the call is made have previously consented to being called, and thus concluding that because the persons subscribing to the called number at the time the call was placed were not the people who furnished the number to the creditor, they had not expressly consented to being called); *Stuart v. AR Resources, Inc.*, No. 10-3520, 2011 WL 904167, at *5 ("In a 2008 Declaratory Ruling, the FCC clarified that such express consent 'is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.'").

   Further, the FCC has since *narrowed* the scope of "prior express consent." *See* 47 C.F.R. § 64.1200(f)(8), effective October 16, 2013. Thus, it seems exceedingly unlikely that the FCC, if it even does address these issues, would reverse course and define "prior express consent" more broadly to apply to persons such as Mr. Shehan who had no prior dealings with Wells Fargo whatsoever, and who never provided his phone number to Wells Fargo. As such, waiting for another FCC ruling "clarifying" these issues, as Wells Fargo suggests, would only serve to

12

unnecessarily delay the resolution of this litigation. As the court in *Frydman v. Portfolio Recovery Associates, LLC*, noted in denying a similar motion to stay:

> The repetitious nature of the requests to the FCC to reconsider its rules on the scope of the TCPA suggests that deferring to the agency on this issue only would add fuel to a never-ending cycle at the cost of delaying resolution of the underlying dispute. The impact of such delay on the expeditious resolution of disputes and the interest of proving certainly to the parties here and others similarly situated outweigh any potential benefits of deferring to the FCC on this issue, which are minimal at best.

No. 11 CV 254, 2011 WL 2560221, at *7; *see also Fail*, 2014 WL 3574532, at *2.

### d. Numerous courts have rejected similar motions to stay based upon the primary jurisdiction doctrine.

As set forth above, the issues raised by Wells Fargo are not issues of first impression. This is why numerous courts have rejected similar motions to stay based on the primary jurisdiction doctrine. *See, e.g., Fenescey*, 2014 WL 2526571, at *2; *Robinson*, 2011 WL 1434919, at *5 (denying a motion to stay pursuant to the primary jurisdiction doctrine, in part, because "[t]he FCC has already issued a declaratory ruling stating debt collectors who make autodialed or prerecorded calls to a wireless number are responsible for any violation of the TCPA."); *Tovar*, 2011 WL 1431988, at *3 (rejecting motion to stay, in part, because the "FCC has already issued a declaratory ruling stating debt collectors who make autodialed or prerecorded calls to a wireless number are responsible for any violation of the TCPA."); *Frydman*, 2011 WL 2560221, at *5 (denying motion for stay that requested stay on primary jurisdiction grounds so FCC may decide whether debt collectors are exempt from FCC and whether predictive dialers are automated dialing systems within the meaning of the term in the TCPA); *Meyer v. Receivables Performance Management, LLC*, No. C12–2013RAJ, 2014 WL 1976664, at *1-2 (W.D. Wash., May 14, 2014). This Court should do the same.

While Wells Fargo cites opinions where courts have stayed litigation pursuant to the primary jurisdiction doctrine, most of those opinions are distinguishable from this case because they were based on issues of technical complexity that *were* issues of first impression.[7] Most critically, Wells Fargo does not cite a single case where a district court granted a stay to allow the FCC to opine on a question already answered by the presiding circuit court of appeals. To be sure, the only post-*Osorio* decisions from district courts in the Eleventh Circuit have denied motions to stay. *Fail*, 2014 WL 3574532, at *2; *Murray*, 2014 WL 2574042, at *2; *Ayers*, 2014 WL 2574543, at *2.

### C.  A stay would prejudice Plaintiff and the Class, with little to no benefit.

Courts weigh the benefits of applying the primary jurisdiction doctrine against the potential litigation costs resulting from complications and delay. *Nat'l Commc'ns Ass'n, Inc. v. American Tel. and Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995). A stay will not serve judicial economy here, particularly in light of binding authority from the Eleventh Circuit.

Wells Fargo offers no credible evidence that the FCC will rule on the salient petitions at all, let alone that if it were to so, that such guidance would apply retroactively to the pending litigation.[8] *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (holding that agency regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations require

---

[7] While Wells Fargo relies on *Couser v. Pre-Paid Legal Services, Inc.*, 2014 WL 197717 (S.D. Cal. Jan. 16, 2014), the court there did not grant a stay. In any event, the court was concerned with whether the TCPA applied to a company that provided software enabling its customers to send voice messages to a wide audience, not any of the issues raised by Wells Fargo here. *Id.*, at *5-6.

[8] Wells Fargo advances the Declaration of Monica Desai for the proposition that the FCC "is likely to act on the UHS and ACA Petitions as early as this year." Doc. 17 at 2, Doc. 20. Ms. Desai's speculation about future FCC actions should be afforded no weight. Unless Ms. Desai has been informed by the FCC about its decisions with respect to the petitions at issue—which she does not profess to be the case—she cannot credibly be used to predict the future. Simply, from the outside looking in, there is no way to ascertain definitively whether, when, or if the FCC will address the UHS and/or ACA Petitions.

it); *Beller v. Health & Hosp. Corp.*, 703 F.3d 388, 391 (7th Cir. 2012). As a result, any resulting change in the interpretation of the TCPA would be unlikely to affect Plaintiff's claims here. *See, e.g., Frydman*, 2011 WL 2560221, at *7 (declining to refer case to FCC under doctrine of primary jurisdiction because any ruling would likely only be made on a prospective basis).

By contrast, it is well recognized that "[a]gency decisionmaking often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system." *Nat'l Commc'ns Ass'n*, 46 F.3d at 225. The substantial delay resulting from a stay and corresponding impact to the Plaintiff and the Class members will outweigh any potential benefits of waiting for the FCC to rule on issues already decided by the Eleventh Circuit, if the FCC does rule at all. *See Trainor v. Citibank, Nat. Ass'n*, No. 14-62 (PAM/JSM), 2014 WL 2574527, at *2 (D. Minn. June 9, 2014) ("It may be that the FCC is poised to overturn its prior decisions, but given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess. An indefinite stay is not in any party's interest.").

### III.     CONCLUSION

For the foregoing reasons, Mr. Shehan respectfully requests that the Court deny Wells Fargo's Motion to Stay and allow this case to proceed without additional delay.

Dated: July 25, 2014                         *s/ Michael L. Greenwald*
                                             Michael L. Greenwald (*pro hac vice*)
                                             Gina DeRosier Greenwald
                                             Greenwald Davidson PLLC
                                             5550 Glades Road, Suite 500
                                             Boca Raton, FL  33486
                                             Telephone:     (561) 826-5477
                                             Facsimile:     (561) 961-5684
                                             mgreenwald@mgjdlaw.com
                                             ggreenwald@mgjdlaw.com

                                             Counsel for Plaintiff and the proposed Class

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

R. Frank Springfield
Ryan J. Hebson
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
fspringf@burr.com
rhebson@burr.com

Eric J. Troutman
Divya S. Gupta
SEVERSON & WERSON, P.C.
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
ejt@severson.com
dsg@severson.com

              *s/ Michael L. Greenwald*
              Michael L. Greenwald